## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| TACARA EDWARDS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:21-00026-N |
| | ) | |
| KILOLO KIJAKAZI, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
|     Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Tacara Edwards brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 13, 14, 15)[2] and those portions of the certified transcript of the

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2] After the Commissioner filed her brief and the case was set for oral argument, Edwards filed a brief in reply to the Commissioner's brief (Doc. 17). Neither the Social Security Scheduling Order (Doc. 5) nor the Court's Standing Order No. 4 (https://www.alsd.uscourts.gov/sites/alsd/files/STDO4.PDF), on which the scheduling order is based, provide for the filing of a reply brief, and Edwards neither sought nor received leave of court to file it. Accordingly, the Court does not consider Edwards's unauthorized reply (Doc. 17).

administrative record (Doc. 12) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.   *Procedural Background*

Edwards protectively filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on August 16, 2018. After they were initially denied, Edwards requested, and on February 12, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On April 7, 2020, the ALJ issued an unfavorable decision on Edwards's applications, finding her not entitled to benefits. (*See* Doc. 12, PageID.63-94).

The Commissioner's decision on Edwards's applications became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on November 17, 2020. (*Id.*, PageID.52-56). Edwards subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20). With the Court's leave, the parties jointly waived the opportunity to present oral argument after briefing closed. (*See* Docs. 18, 21).

Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

---

[Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[5] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted));

---

*Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims."

---

court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

(some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v.*

*Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per

curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Edwards met the applicable insured status requirements for DIB through June 30, 2020, and that she had not engaged in substantial gainful activity since the alleged disability onset date of May 29, 2018.[8] (Doc. 12, PageID.68). At Step Two,[9] the ALJ determined that Edwards had the

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A

following severe impairments: lumbar radiculopathy, sleep apnea, obesity, intellectual disability, and prior right carpal tunnel syndrome. (Doc. 12, PageID.68-72). At Step Three,[10] the ALJ found that Edwards did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 12, PageID.72-80).

At Step Four,[11] the ALJ determined that Edwards had the residual functional

---

claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[10] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[11] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

capacity (RFC) "to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)[12] except she can frequently handle items, finger, and feel bilaterally[;] can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs[,] but never climb ladders, ropes, or scaffolds[;] can never work at unprotected heights or with moving mechanical parts[; and] can understand, remember, and carry out simple tasks consistent with unskilled work, have occasional contact with the general

---

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[12] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "medium" work are as follows:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the Commissioner] determine[s] that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1567(c), 416.967(c).

public[,] and tolerate few changes in a routine work setting, defined as infrequent, well explained changes." (Doc. 12, PageID.80-85). Based on the RFC and the testimony of a vocational expert,[13] the ALJ found that Edwards was capable of performing past relevant work as a hospital housekeeper. (Doc. 12, PageID.85).

However, as an alternative finding, the ALJ proceeded to Step Five and, after considering additional testimony from the vocational expert, found that there also exist a significant number of other jobs in the national economy as an off bearer (~68,000 jobs nationally), store laborer (~120,000 jobs nationally), and hand packager (~80,000 jobs nationally) that Edwards could perform given her RFC, age, education, and work experience. (*Id.*, PageID.85-87). Thus, the ALJ found that Edwards was not "disabled" under the Social Security Act.  (*Id.*, PageID.87).

## IV.   *Analysis*

### a.   **Evaluation of Evidence from Nonmedical Source**

Among the evidence the ALJ considered was a February 28, 2019 report from Sondra McCua, a Human Resources Generalist for Borgers USA Corporation, with which Edwards was employed for almost 2 years. (Doc. 12, PageID.74-75). The ALJ purported to evaluate McCua's report using the factors for evaluating medical opinions set forth in 20 C.F.R. §§ 404.1527 and 416.927. (*Id.*, PageID.75). Edwards

---

[13] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

argues that this was improper because the rules in §§ 404.1527 and 416.927 only apply for claims, unlike hers, filed before March 27, 2017.[14] No reversible error has been shown in this regard.

The SSA's Program Operations Manual System (POMS) states that ALJs should "consider evidence from nonmedical sources for all … findings in a claim, as appropriate[,]" except for establishing whether a claimant has a medically determinable impairment. POMS DI 24503.020(C) (effective Mar. 15, 2018) (https://secure.ssa.gov/apps10/poms.nsf/lnx/0424503020 (last visited Sept. 29, 2022)).[15] "When evidence from nonmedical sources is material to … analyses or conclusions in a claim" other than establishing a medically determinable impairment, the ALJ should "articulate that in the determination." POMS DI 24503.020(D)(1). For claims filed on or after March 27, 2017, the POMS directs ALJs to "not provide written analysis about how [they] considered statements on issues reserved to the Commissioner and about decisions from other governmental agencies and nongovernmental entities." POMS DI 24503.020(D)(3). Otherwise, the POMS does

---

[14] For claims filed before March 27, 2017, the factors used to evaluate medical opinions are also to be used in evaluating opinions from nonmedical sources. *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

[15] "The Social Security Administration's POMS is the publicly available operating instructions for processing Social Security claims. *Wash. State Dep't of Soc. & Health Servs. v. Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 154 L. Ed.2d 972 (2003). While the 'administrative interpretations' contained within the POMS 'are not products of formal rulemaking, they nevertheless warrant respect.' *Id.*; *see Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003) ('While the POMS does not have the force of law, it can be persuasive.')." *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 n.* (11th Cir. 2018) (per curiam) (unpublished).

not state any specific guidance on how ALJs are to evaluate evidence from nonmedical sources for claims filed on or after March 27, 2017, *see id.*, and under the regulations for evaluating opinions for claims filed on or after March 27, 2017, such as the subject applications, the Commissioner is "not required to articulate how [she] considered evidence from nonmedical sources using the requirements in" those regulations. *See* 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Edwards has failed to show how the ALJ's use of the factors in §§ 404.1527 and 416.927 to evaluate McCua's report "violated 20 C.F.R. §§ 404.1520c and 419.920c[,]" since, as Edwards concedes, "the revised Regulations [for claims filed on or after March 27, 2017,] do not provide any instructions on how to consider evidence from nonmedical sources." (Doc. 14, PageID.1636).[16]

### b.     Dr. Blanton's Medical Opinions

Edwards further argues the ALJ erred in finding McCua's report to be more persuasive than the medical opinions of consultative examiner Donald Blanton, Ph.D., who conducted psychological evaluations of Edwards on January 7, 2019, and February 3, 2020. No reversible error has been shown.

Edwards disputes the ALJ's conclusion that McCua "had the opportunity to review [Edwards]'s actual functional abilities within a work setting and evaluate her activities when compared to those of her coworkers" (Doc. 12, PageID.75),

---

[16] Indeed, since §§ 404.1520c and 416.920c provide that an ALJ is not required to articulate at all how evidence from nonmedical sources was considered, the ALJ's decision to articulate the factors she considered anyway benefits both Edwards and this Court by making it easier to determine whether the ALJ's decision regarding McCua's report was reasonable and supported by substantial evidence.

complaining that McCua "did not assert she had ever actually observed Ms. Edwards on the job[, and] completed the form February 28, 2019, nine months after Ms. Edwards stopped working." (Doc. 14, PageID.1637). Edwards also argues that should not have accepted McCua's report even under the §§ 404.1527 and 416.927 factors because "Ms. McCua's statement did not indicate how long she had known Ms. Edwards or how frequently she had seen her, or in fact whether she had ever known Ms. Edwards; the statement is not consistent with the other evidence; Ms. McCua provided no relevant evidence to support her opinion; Ms. McCua provided no explanation of her opinion, as she merely checked boxes; and Ms. McCua failed to indicate whether she has a specialty or area of expertise related to Ms. Edwards' impairments." (Doc. 14, PageID.1636-1637).

For the sake of argument, the undersigned accepts the proposition that the ALJ gave undue consideration to McCua's report. As Edwards points out, McCua's report was completed several months after Edwards's last day with Borgers USA, and her report does not make clear whether the opinions therein are based on McCua's personal knowledge, or on information provided by others. Though Edwards does not argue this particular point, the undersigned also observes that, per McCua's report (*see* Doc. 12, PageID.322), Edwards's last date of employment—and therefore, it would seem, the last day McCua or any other Borgers USA employee would have had a chance to observe Edwards working—was July 26, 2018, which was only two months after the alleged disability onset date of May 29, 2018, and several weeks prior to the SSI application date of August 16, 2018. Thus, the observations in

McCua's report fell entirely outside of Edwards's SSI adjudication period, and only covered the first two months of Edwards's DIB adjudication period. *See* n.8, *supra*. And since the ALJ concluded at Step One that Edwards had not engaged in substantial gainful activity since the alleged disability onset date (*see* Doc. 12, pageID.68), it would seem that any work observed by McCua or other Borgers USA employees for those two months would have been minimal.

Nevertheless, any overemphasis of McCua's report is ultimately harmless, [17] as the ALJ articulated sufficient other reasons for finding Dr. Blanton's opinions not persuasive,[18] and the ALJ's decision otherwise reflects that her conclusions were

---

[17] An ALJ's harmless errors do not warrant reversal of a final decision. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). An "error is harmless if it did not affect the judge's ultimate determination[,]" *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (per curiam) (unpublished) (citing *Diorio*, 721 F.2d at 728); *accord Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016) (per curiam) (unpublished), and the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L.Ed.2d 532 (2009).

[18]    Medical opinions are one category of evidence the Commissioner considers in making disability determinations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). The regulations define "medical opinion" as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she] ha[s] one or more impairment-related limitations or restrictions in the following abilities: ... (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).
       The Commissioner "will not defer or give any specific evidentiary weight,

based on the record as a whole and supported by evidence apart from McCua's report. In particular, the ALJ noted at least three instances where she determined the record evidence supported greater limitation than what McCua opined. (*See* Doc. 12, PageID.85).[19]

---

including controlling weight, to any medical opinion(s) … , including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the Commissioner] will consider those medical opinions or prior administrative medical findings from that medical source together using [the following] factors[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c), 404.920c(c).

   "The most important factors … are supportability … and consistency…" 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *accord* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the] determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] medical opinions and prior administrative medical findings in [the] case record[,]" *id.*, unless the Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

[19] Edwards claims, in conclusory fashion, that the ALJ cited McCua's report "as a basis to contradict the opinion of treating physician [John] Dorsey[, M.D]." (Doc. 14, PageID.1641 (citing Doc. 12, PageID.84)). Edwards is mistaken on this point, however, as the ALJ's decision actually reflects that she relied on Dr. Dorsey's reports to find that Edwards was <u>more</u> limited in her ability to understand, remember, and carry out instructions than what McCua reported. (*See* Doc. 12, PageID.84 ("[T]he

The ALJ summarized Dr. Blanton's opinion, which was based on his February 2020 examination of Edwards, as follows:

> …Dr. Blanton opined that the claimant had marked limitations that seriously interfered with her ability to perform work-related activities on a day-to-day basis in a regular work setting in the following areas: understanding, carrying out, and remembering "detailed or complex" work-related decisions; using judgment and detailed, or work related decisions; responding to customary work pressure; and responding appropriately to co-workers. He stated that the claimant could maintain attention, concentration, and pace for at least two hours, but he also opined that the claimant's emotional problems were likely to worsen if she was placed under stress, such as a job.

(Doc. 12, PageID.76).

The ALJ found that Dr. Blanton's "assessment is not supported by the longitudinal treatment records, which consistently reported that [Edwards] was alert and oriented with an appropriate mood and affect[,]" and "which clearly reflects that [Edwards] is able to care for herself; the observations of Mrs. McCua that are of [Edwards]'s actual functional abilities in a work environment; or his own findings." (*Id.*, PageID.78-79). With regard to Dr. Blanton's opinion that Edwards's "emotional problems were likely to worsen if she was placed under stress, such as a job[,]" the ALJ found that statement was "of a general nature that does not offer any probative evidence into [Edwards]'s vocational ability to perform basic mental work activity."

---

longitudinal treatment records establishes that the claimant has the ability to understand, remember, and carry out at least simple tasks that allow her to perform unskilled work activity, as Mrs. McCua related that the claimant was able to understand and carry out simple 1 or 2 step instructions and detailed instructions, but Dr. Dorsey consistently reported that the claimant's language was simple, which indicates that the claimant might have difficulty, particularly considering the claimant's full-scale IQ score, performing complex or detailed tasks.").

(*Id.*, PageID.78).[20] Leaving aside McCua's report, substantial other evidence supports the ALJ's decision to find Dr. Blanton's opinion unpersuasive.

As the ALJ noted, for instance, even at the February 2020 examination, Dr. Blanton observed:

> [T]he claimant's thoughts and conversation were simple, but logical. Her associations were intact, and her affect was flat but appropriate. There was no confusion noted, and the claimant denied significant anxiety. No psychomotor retardation was noted, and the claimant gave vague references to auditory hallucinations that Dr. Blanton stated were more likely dreams. No delusions or fears of persecution were noted, however, the claimant was obsessing about her pain. Nonetheless, she was alert and oriented to time, place, person, and situation. Her judgment was adequate for work and financial type decisions.

(*Id.*, PageID.76). The ALJ also noted that Dr. Blanton made similar observations at his January 2019 examination (*see id.*, PageID.74), and noted similar mild findings documented by multiple medical sources over the relevant adjudicatory period. (*See id.*, PageiD.73-76).

Edwards does little to address the ALJ's view of the longitudinal evidence regarding her mental impairments, instead largely asserting that Dr. Blanton's opinion is supported by her diagnoses of various mental impairments. However, "the mere existence of these impairments does not reveal the extent to which they limit

---

[20] Edwards disputes the ALJ's reasoning on that point by arguing: "Dr. Blanton observed Ms. Edwards on two occasions, and the second occasion involved multiple objective tests. He certainly had the opportunity to observe how she handled the pressures of testing, which would approximate work-related stressors." (Doc. 14, PageID.1639-1640). Whatever Dr. Blanton may have observed regarding work-related stressors at his examinations, Edwards fails to refute the ALJ's point that the statement Dr. Blanton actually provided in his opinion on this issue was too "general" to be of use in assessing specific work-related limitations.

her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *Accord, e.g.*, *Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, at *3 (11th Cir. July 21, 2021) (per curiam) (unpublished) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work. Nor does it undermine the ALJ's determination that she can work." (citing *Moore*, 405 F.3d at 1213 n.6)). Edwards also cites four pages of school records from the 1990s and 2000s that she claims "show grade repetition, poor performance, early school departure, and special education placement." (Doc. 14, PageID.1639 (citing Doc. 12, PageID.358-360)). Whatever the significance of the information in those records regarding her ability to work after the 2018 disability onset date, the mere fact a claimant can point to some evidence that cuts against an ALJ's decision does not mandate reversal, since an ALJ's factual findings need only substantial evidentiary support to be upheld, even if the evidence preponderates against them. *See Ingram*, 496 F.3d at 1260.

In sum, Edwards has failed to persuasively show reversible error in the ALJ's consideration of Dr. Blanton's opinion.

### c.   Listing 12.05B

Edwards next argues the ALJ erred in finding that she did not meet Listing 12.05B ("Intellectual Disorder"), which requires a satisfactory showing of each of the following:

> 1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two,[21] of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05B.

The ALJ found that Edwards satisfied the B(1) criteria (*see* Doc. 12, PageID.77 ("[T]he Wechsler Adult Intelligence Scale-IV test conducted by Dr. Blanton revealed that the claimant had a full-scale IQ score of 62, which satisfies the initial requirements to meet the paragraph B criteria."), but determined that she did not satisfy the B(2) criteria because Edwards had "no limitation in adapting or managing

---

[21] "Marked limitation" indicates a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited[,]" while "extreme limitation" indicates the claimant is "not able to function in [an] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00F(2)(d)-(e).

oneself," and only "moderate limitation" in the other three areas. (*Id.*).[22] Edwards argues that the ALJ should have determined she had "marked limitation" in all four areas.

In arguing that she has marked limitation in the area of understanding, remembering, or applying information, Edwards points to statements in her Function Report indicating she "relied on her mother for help with child care, with reminders to take her medicine, with household chores and cooking, and with money management[,]" as well as her own hearing testimony and statements from her mother corroborating the Function Report. (Doc. 14, PageID.1642). The ALJ expressly considered those claims in her decision, but found they were not credible in light of notes by both a nurse and one of Edwards's treating physicians, Perry Timberlake, M.D., that Edwards "was able to care for herself." (Doc. 12, PageID.78). This was substantial evidence supporting that conclusion.[23]

In arguing that she has marked limitation in the area of interacting with others, Edwards cites the following:

---

[22] "Moderate limitation" indicates a claimant's "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is fair[,]" while "no limitation" indicates the claimant is "able to function in [an] area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00F(2)(a), (c).

[23] Edwards argues Dr. Timberlake's February 11, 2019 treatment note stating Edwards could care for herself is unreliable due to supposedly inaccuracies in that report regarding Edwards's employment. However, Edwards ignores the fact that Dr. Timberlake also stated Edwards could take care of herself in treatment notes from January 6 and February 7, 2020 (*see* Doc. 12, PageID.76), and she does not question the credibility of the nurse's statements saying the same thing.

On her Function Report, Ms. Edwards testified she had anxiety and mood swings that affected her ability to get along with others. (Doc. 12, PageID.318). Her mother provided consistent testimony in the Third Party Function Report. She stated Ms. Edwards liked to be left alone and could not hold normal conversations with others. (Doc. 12, PageID.300-302). At her hearing Ms. Edwards testified she had no friends and did not like to be around noise or other people. (Doc. 12, PageID.115). Dr. Dorsey, the treating psychiatrist, noted she continued to isolate. (Doc. 12, PageID.918-919). She told Dr. Blanton she did not like to be around people and stayed to herself. (Doc. 12, PageID.855, 1589-1590). Dr. Blanton noted she had marked limitations in the ability to respond appropriately to coworkers and adaptive deficits in communication skills. (Doc. 12, PageID.1591).

(Doc. 14, PageID.1643).

However, the ALJ's discussion of the treatment history repeatedly indicates that Edwards was able to interact with her health care providers with minimal difficulty, as evidenced by such notations as "flat but appropriate affect" and denials of anxiety. This is substantial evidence supporting the ALJ's conclusion that Edwards has, at most, only moderate limitation in the area of interacting with others.

In arguing that she has marked limitation in the area of concentrating, persisting, or maintaining pace, Edwards again relies primarily on reports of her daily activities provided by herself and her mother:

According to the Function Report, Ms. Edwards relied on her mother for reminders to take her medicine. (Doc. 12, PageID.315). Ms. Edwards stated she did not finish what she started. (Doc. 12, PageID.318). Her mother provided consistent testimony in the Third Party Function Report. She stated she had to remind Ms. Edwards to dress, to bathe, to care for her hair, and to do laundry or light housework. (Doc. 12, PageID.298-299, 303). She stated Ms. Edwards did not finish what she started. (Doc. 12, PageID.302). At her hearing Ms. Edwards testified she had problems concentrating and had to be reminded to do activities like

taking her medications, grooming, bathing, brushing her teeth, and eating. (Doc. 12, PageID.116-117).

(Doc. 14, PageID.1643-1644).

However, even Dr. Blanton opined that Edwards "could maintain attention, concentration, and pace for at least two hours," and the ALJ does not appear to have found that part of the opinion unpersuasive, only those portions indicating "marked" limitations. (Doc. 12, PageID.78). That, and the generally mild to unremarkable symptoms noted in the mental health treatment record, substantially support the ALJ's finding of only moderate limitation in this area.

Finally, because Edwards has shown no error in the ALJ's finding less than marked limitation in the other three areas, and because marked limitations in two areas are required to meet Listing 12.05B,[24] the undersigned need not determine whether the ALJ erred in finding less than marked limitation in the area of adapting or managing oneself.

### d.    Past Relevant Work

Finally, Edwards argues that the ALJ erred in finding that she could perform past relevant work at Step Four. However, the ALJ made an alternative Step Five finding that Edwards could also perform other jobs existing in significant numbers in the national economy. Edwards does not challenge that finding, which independently supports the ALJ's conclusion that Edwards is not disabled. Accordingly, any error

---

[24] She does not argue that she has "extreme limitation" in any functional area.

in finding Edwards could perform past work is harmless.[25]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Edwards's applications for benefits is due to be **AFFIRMED**.

### V.   *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Edwards's August 16, 2018 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

A final judgment consistent with this opinion and order shall issue separately under Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of September 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] To the extent Edwards's brief (Doc. 14) raises any other claims not expressly addressed above, they are summarily rejected as insufficiently raised and/or without merit.